## No. 8052.

### ADOLPH VERRET VS. ROBERT BONVILLAIN ; AND ROBERT BONVILLAIN VS. ADOLPH VERRET. (CONSOLIDATED.)

A. had been living a number of years in New Orleans, where he owned real estate. He was unmarried, old and infirm. He left there, taking with him his furniture, and went to the Parish of St. Mary, to the house of his nephew, where he died a short time after he arrived. His succession was opened both in New Orleans and in the Parish of St. Mary. The question is : where did he reside when he died ? *Held* that the circumstances of the case show his residence was in the Parish of St. Mary where he went with the intention of remaining ; and that his Succession was legally opened there.

APPEAL from the Civil District Court for the parish of Orleans. *Tissot,* J.

*A. L. Tucker* for the Administrator appointed in parish of St. Mary, Appellant:

The law fixes the place of the opening of a succession, "in the parish where the deceased resided, if he had a fixed domicil or residence in the State," at the time of his death.　C. C. Art. 935.

"A change of domicil from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there." C. C. 41.　In case the declaration provided for in C. C. Art. 42 is not made, "the proof of this intention shall depend upon circumstances."　C. C. 43; 8 L. 213; 11 L. 178; 12 L. 190; 30 An. 498.

"If it sufficiently appear that the intention of removing was to make a permanent settlement, or for an indefinite time, the right of domicil is acquired by a residence even of a few days.　In questions on this subject, the chief point to be considered is the *animus manendi*."　8 Cranch, 279; 13 L. 297; Story's Conflict of Laws, §§ 46, 47.

"The actual residence of a person at a particular place, with the intention of remaining there permanently, constitutes the place of his domicil, at least until such intention to remain there has been abandoned.　And the declarations of the person, where he has no inducement to falsify the truth or to deceive those to whom the declarations are made, are the best evidence of his intention to make his actual residence his permanent residence also."　8 Page C. R. 519-523-4; 1 Woodbury & Minot's R. 12, and cases there cited; 27 Miss. R. 704.

*T. M. Gill* for the Administrator appointed in New Orleans, Appellee:

First—Evidence of the loose conversations of a person deceased, is of no weight.　10 L. 355; 2 R. 300; 7 R. 112; 6 An. 114, 763-4; 8 An. 278; 10 An. 279; 14 An. 275; 18 An. 618; 24 An. 604.

Second—He who alleges the change of a fixed domicil, must show affirmatively the change.

Third—The deceased's succession must be opened in the parish where he resided, if he had a fixed domicil or residence in this State; if he had neither domicil nor residence in this State, his succession must be opened in the parish in which he owned immovable property, or in which his principal effects are.　C. C. 935 (929); C. P. 929.

Fourth—If opened elsewhere, all proceedings would be absolutely null and void.　3 An. 261; 21 An. 399-401; 26 An. 269-70; 27 An. 351-2.

The opinion of the Court was delivered by

Todd, J.　August H. Verret died in the parish of St. Mary, on the 2d of April, 1877.　His succession was opened in that parish, and Robert Bonvillain appointed administrator thereof, on the 30th of the same month.　On the sixth of July following, Adolph Verret was appointed administrator of the same succession by the Second District Court of New Orleans, on representation made that the deceased was a resident of that city at the time of his death.　Bonvillain, as administrator, obtained an order from the parish court of St. Mary to sell the property of the deceased, situated in the city of New Orleans.　This sale was enjoined by Verret as administrator, on the ground that all the mortuary proceedings in the parish of St. Mary were null because of the succession being improperly opened in that parish.

Bonvillain then brought an action to revoke the appointment of

Verret, made in the parish of Orleans, alleging its illegality by reason of the residence of the deceased being in St. Mary when he died.

These suits were consolidated and tried together. . Subsequent to their institution, Bonvillain died, and Philip Patout, having been appointed to succeed him, by the probate court of St. Mary, became a party to the proceedings. There was judgment in the lower court perpetuating the injunction taken out by Adolph Verret against the sale of the property in New Orleans, and declaring the appointment in St. Mary and the other mortuary proceedings there null, and dismissing the suit instituted by Bonvillain for the revocation of Verret's appointment; and from this judgment Patout, successor of Bonvillain, has appealed.

The sole question for our determination is, whether the residence or domicil of the deceased, A. H. Verret, was in the parish of St. Mary or in the parish of Orleans at the time of his death, since the law declares the proper place of the opening of a succession to be in the parish " where the deceased resided, if he had a fixed domicil or residence in the State." C. C. 935.

The evidence shows that the deceased left the city of New Orleans on or about the first of March, 1877, and arrived in the parish of St. Mary about the fifth of the same month and died there, as stated, on the second of April following.

The deceased had resided in the city of New Orleans for at least fifteen years previous to his leaving for the parish of St. Mary. He was a man about sixty years of age and unmarried, and had been very infirm for several years. He was accompanied from New Orleans to the parish of St. Mary by his nephew, Robert Bonvillain, who lived in that parish, to whose house he went, and where he died.

Upon leaving, he took with him from New Orleans all his furniture, which consisted of a bedroom set. As stated, he had never been married, and had no family or relations living with him at the time.

If the deceased left New Orleans and went to St. Mary with the intention of making his domicil there, the act of leaving coupled with such intention, followed by the act of residing there, would effect a change of domicil from the one place to the other. As more clearly expressed: " A change of domicil from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there." C. C. 41.

It is often a matter of difficulty to ascertain the intention of a person, consisting of the operation of the will or condition of the mind. Our law provides that, where that intention is not expressly declared before the recorders of the parishes from which and to which it is intended to remove, the proof of the intention shall depend on circumstances. C. C. 42, 43.

" Circumstances," as used in the above article, we construe to mean the acts and words of the party whose intention is sought to be discovered, together with his condition and surroundings when the acts were done and the words spoken.

The acts and conditions of the deceased we have already referred to: that he did leave the one parish and go to the other, taking with him his household effects, which, as far as the evidence shows, constituted his movable property; that he was old and infirm, without family or near relations in the place from which he removed; that he went to the house of a nephew—a man of family—where, it might be reasonably supposed, he would hope to find the care and comfort that his condition required.

If the deceased was honest, sincere and truthful—and we have no reason to think otherwise—his words, if he spoke of his intention in making the removal, would be more complete and satisfactory evidence of that intention than his acts and other circumstances just referred to. In fact his words, if faithfully reported, would solve all doubt on the subject. The deceased did make declarations of his intention, and his words spoken and declarations made on the eve of his removing, during the time of his removing, and after reaching his destination or the place to which he removed, have been testified to by numerous witnesses, whose testimony has not been impeached, and whom we have no more reason to disbelieve than we would have to reject any other human testimony. Those declarations were substantialy to the effect, that his intention was to leave New Orleans permanently and make his home or domicil in the parish of St. Mary. We have scanned the record closely, and find no evidence that contradicts or is inconsistent with the testimony of these witnesses. The witnesses relied on, as showing such contradiction, mainly testify to acts and expressions of the deceased anterior to his removal, and when his acknowledged residence was in the parish of Orleans, and, to some extent, show only the opinions of witnesses touching the matter at issue.

Nor does it matter, as urged by counsel, that the deceased was in the parish of St. Mary only a few weeks, or few days, prior to his death. If the intention referred to existed, the change was consummated so soon as the act of residing in that parish commenced. As was said in the case of Gravilon vs. Richards, 13 L. 297, "As soon as the will of making a permanent establishment in the country is combined with the fact of residence, the residence, even for a few days, fixes the domicil." And it was held by the Supreme Court of the United States : "That if it sufficiently appear that the intention of removing was to make a permanent settlement or for an indefinite time, the right of domicil is acquired by residence even of a few days. In questions on this subject,

the chief point to be considered is the *animus manendi*." 8 Cranch, 279. See, also, Story, Conflict of Laws, 46, 47; 11 L. 178; 12 L. 190; 30 An. 498.

Our conclusion is, therefore, that, at the time of his death, the deceased resided or had his domicil in the parish of St. Mary, and that his succession was properly opened in that parish; and from this conclusion it follows, that the judgment of the lower court was erroneous.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that the injunction in case of Adolph Verret vs. Robert Bonvillain be dissolved, and the appointment of Adolph Verret as administrator of the succession of August H. Verret, and all probate proceedings in the Second District Court of New Orleans, relating to said appointment and said succession, be annulled and set aside, the appellee to pay costs of both courts.

Rehearing refused.